Gail Migdal Title (SBN 49023)
Joel R. Weiner (SBN 139446)
Cory A. Baskin (SBN 240517)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone:   310.788.4400
Facsimile:    310.788.4471
gail.title@kattenlaw.com
joel.weiner@kattenlaw.com
cory.baskin@kattenlaw.com

Attorneys for Defendants NBC UNIVERSAL, INC.,
NBC STUDIOS, INC. and TAILWIND PRODUCTIONS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION, LOS ANGELES

| | |
|---|---|
| JAZAN WILD, an individual, dba CARNIVAL COMICS,<br><br>                 Plaintiff,<br><br>        vs.<br><br>NBC UNIVERSAL, INC., a Delaware Corporation, NBC STUDIOS, INC., a New York Corporation, TAILWIND PRODUCTIONS, INC., a California Corporation<br><br>                 Defendants. | CASE NO.: 2:10-cv-03615-DMG (AJWx)<br><br>[Hon. Dolly M. Gee]<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Date:  September 13, 2010<br>Time: 9:30 a.m.<br>Place: Courtroom 7<br><br>Complaint Filed: May 13, 2010<br>FAC Filed: May 19, 2010 |

1

31527988_206172_00354

*Katten*
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

TO PLAINTIFF AND HIS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on September 13, 2010, at 9:30 a.m., or as soon thereafter as the parties may be heard, before the Honorable Dolly M. Gee, United States District Judge, in Courtroom 7, located at 312 North Spring Street, Los Angeles, California 90012, defendants NBC Universal, Inc., NBC Studios, Inc. and Tailwind Productions, Inc. (collectively, "Defendants") will and hereby do move to dismiss the first amended complaint ("FAC") of plaintiff Jazan Wild dba Carnival Comics in its entirety, and each claim alleged therein, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants move to dismiss the FAC on the grounds that Plaintiff fails to state any claim upon which relief can be granted.  More specifically, the FAC's first claim for copyright infringement should be dismissed because, as a matter of law, there is no substantial similarity between Plaintiff's work and Defendants' allegedly infringing work.  The FAC's second through fifth claims for intentional and negligent interference with prospective economic advantage, unfair competition and unjust enrichment should be dismissed because they are preempted by the Copyright Act.  These state law claims also fail because they are dependent upon the defective copyright claim.  The economic interference claims are also subject to dismissal because Plaintiff has not pled and cannot plead that Defendants interfered with an existing prospective economic relationship between Plaintiff and any third party.  The negligent interference claim also fails because Plaintiff cannot establish that Defendants owed Plaintiff any duty of care.  Finally, in addition to being preempted, the unjust enrichment claim is improper because unjust enrichment is a remedy, not a viable cause of action in California.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 19, 2010.

This Motion is based upon this Notice of Motion and the attached Memorandum of Points and Authorities; the pleadings and papers on file in this

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  action; Defendants' Request for Judicial Notice filed concurrently herewith and any

2  other matters of which the Court may take judicial notice; the Declaration of Cory A.

3  Baskin; the works lodged by Defendants concurrently herewith; and such other

4  argument that may be presented to this Court at or before the hearing on this Motion.

5

6  Dated: August 10, 2010              KATTEN MUCHIN ROSENMAN LLP

7                                      Gail Migdal Title
                                       Joel R. Weiner

8                                      Cory A. Baskin

9                                      By:    /s/ Gail Migdal Title

10                                            Gail Migdal Title

11                                     Attorneys for Defendants NBC UNIVERSAL,
                                       INC., NBC STUDIOS, INC. and TAILWIND

12                                     PRODUCTIONS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   FACTUAL BACKGROUND .......................................................................2

    A.    The Allegations in the FAC ..............................................................2

    B.    Summary of the Works at Issue ........................................................2

        1.    *Carnival of Souls* ................................................................2

        2.    Season 4 of *Heroes* .............................................................4

III.  PLAINTIFF'S COPYRIGHT CLAIM SHOULD BE DISMISSED
      BECAUSE, BASED ON A COMPARISON OF THE WORKS, NO
      REASONABLE JUROR COULD FIND SUBSTANTIAL
      SIMILARITY OF PROTECTED EXPRESSION. ........................................5

    A.    Legal Standards .................................................................................5

        1.    Standard for Determining a Motion to Dismiss in a
            Copyright Infringement Action. .........................................5

        2.    Standard for Consideration of the Works Under the Doctrine
            of Incorporation by Reference. ..........................................8

        3.    The Ninth Circuit's Extrinsic Test Requires the Court to
            Compare the Detailed Elements of the Works, After
            Filtering Out Unprotected Elements, Such as General Story
            Ideas and Scenes a Faire. ....................................................9

    B.    Season 4 of *Heroes* Is Not Substantially Similar to *Carnival of
      Souls* As a Matter of Law..................................................................11

        1.    Plot and Sequence of Events...............................................11

        2.    Characters ...........................................................................13

        3.    Setting, Themes, Mood, and Pace ......................................14

        4.    Dialogue..............................................................................15

        5.    Random Purported Similarities...........................................15

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

i

IV.  PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT ....................................................................... 19

A.  Standard for Preemption Under the Federal Copyright Act. ............. 20

B.  Plaintiff's Second and Third Claims for Intentional and Negligent Interference with Prospective Economic Advantage are Preempted by Federal Copyright Law. ................................................ 21

C.  Plaintiff's Fourth Claim for Unfair Competition is Preempted by Federal Copyright Law. ................................................ 21

D.  Plaintiff's Fifth Claim for Unjust Enrichment is Preempted by Federal Copyright Law. ................................................ 22

V.  PLAINTIFF'S STATE LAW CLAIMS ALSO FAIL TO ALLEGE FACTS SUFFICIENT TO STATE VIABLE CAUSES OF ACTION ............. 23

A.  Plaintiff's Interference Claims Fail to Allege an Existing Economic Relationship with a Third Party. ............................. 23

B.  Plaintiff's Negligent Interference Claim Also Fails Because Defendants Do Not Owe Plaintiff a Duty of Care. ..................... 24

C.  Plaintiff's Claim for Unjust Enrichment Should Be Dismissed. ......... 24

VI.  CONCLUSION ....................................................................... 25

Katten

KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31527988_206172_00354

TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal,
129 S.Ct. 1937 (2009) ................................................................................23

Balistreri v. Pacifica Police Dept.,
901 F.2d 696 (9th Cir. 1988) ........................................................................6

Bell Atlantic Corp. v. Twombly,
127 S. Ct. 1955 (2007) ..................................................................................6

Berkic v. Crichton,
761 F.2d 1289 (9th Cir. 1985) ...........................................................1, 10, 13

Branch v. Tunnell,
14 F.3d 449 (9th Cir. 1994) ..........................................................................8

Bryant v. Avado Brands, Inc.,
187 F.3d 1271 (11th Cir. 1999) .....................................................................8

Campbell v. Walt Disney Co.,
-- F. Supp. 2d --, 2010 WL 2489189 (N.D. Cal. May 7, 2010) ....................6

Capcom Co., Ltd. v. MKR Grp., Inc.,
2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ...............................................7

Cavalier v. Random House, Inc.,
297 F.3d 815 (9th Cir.2002) ......................................................................9, 13

Christianson v. West Pub. Co.,
149 F.2d 202 (9th Cir. 1945) .........................................................................6

Cinebase Software, Inc. v. Media Guar. Trust,
1998 WL 661465 (N.D. Cal. 1998) ..............................................................23

Del Madera Prop. v. Rhodes & Gardner,
820 F.2d 973 (9th Cir. 1987) ...................................................................20, 22

Downing v. Abercrombie & Fitch,
265 F.3d 994 (9th Cir. 2001) .......................................................................20

Dr. Seuss Enter., L.P. v. Penguin Books USA,
109 F.3d 1394 (9th Cir. 1997) .......................................................................6

Eldred v. Ashcroft,
537 U.S. 186 (2003) ...................................................................................5, 6

Feist Pubs., Inc. v. Rural Tel. Serv. Co.,
499 U.S. 340 (1991) ...................................................................................5, 9

Funky Films v. Time Warner Entm't Co.,
462 F.3d 1072 (9th Cir. 2006) .........................................................7, 9, 10, 11

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

iii

31527988_206172_00354

Harper & Row Publishers, Inc. v. Nation Enter.,
  471 U.S. 539 (1985) ............................................................................... 6

Hogan v. DC Comics,
  983 F. Supp. 82 (S.D.N.Y. 1997) ..................................................... 8, 13

Idema v. Dreamworks, Inc.,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) ......................................... 20, 21

J'Aire Corp. v. Gregory,
  24 Cal. 3d 799 (1979) ........................................................................ 24

Knievel v. ESPN,
  393 F.3d 1068 (9th Cir. 2005) .............................................................. 8

Kodadek v. MTV Networks,
  152 F.3d 1209 (9th Cir. 1998) ....................................................... 20, 21

Lake v. Columbia Broad. Sys.,
  140 F. Supp. 707 (S.D. Cal. 1956) ....................................................... 7

Lange v. TIG Ins. Co.,
  68 Cal. App. 4th 1179 (1998) ............................................................. 24

Lauriedale Assoc. v. Wilson,
  7 Cal. App. 4th 1439 (1992) ............................................................... 25

Laws v. Sony Music Entm't, Inc.,
  448 F.3d 1134 (9th Cir. 2006) ............................................................ 20

Litchfield v. Spielberg,
  736 F.2d 1352 (9th Cir. 1984) ............................................................ 15

Maheu v. CBS, Inc.,
  201 Cal.App.3d 662 (1988) ................................................................ 21

Mallery v. NBC Universal, Inc.,
  No. CV-07-2250, 2007 U.S. Dist. LEXIS 88960 (S.D.N.Y. Dec. 3, 2007) ......... 7, 18

McKell v. Washington Mutual, Inc.,
  142 Cal. App. 4th 1457 (2006) ........................................................... 24

Montz v. Pilgrim Films & Television, Inc.,
  606 F.3d 1153 (9th Cir. 2010) ............................................................ 21

Motown Record Corp. v. George A. Hormel & Co.,
  657 F. Supp. 1236 (C.D. Cal. 1987) ................................................... 21

Musero, III v. Mosaic Media Group, Inc.,
  10-cv-1748 PA (JCx) (C.D. Cal. August 9, 2010) .............................. 11

Nelson v PRN Prods., Inc.,
  873 F.2d 1141 (8th Cir. 1989),
  cert denied, 493 U.S. 994 (1989) .......................................................... 7

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

iv

Peter F. Gaito Architecture, LLC v. Simone Devel. Corp.,
   602 F.3d 57 (2d Cir. 2010) ........................................................................ 7

Rice v. Fox Broad. Co.,
   330 F.3d 1170 (9th Cir. 2003) ................................................................. 10

Schreiber Distrib. Co. v. Serv-Well Furniture Co.,
   806 F.2d 1393 (9th Cir. 1986) ................................................................... 6

Scott v. Meyer,
   09-cv-6076 ODW (RZx) (C.D. Cal. November 24, 2009) ..................... 11

See v. Durang,
   711 F.2d 141 (9th Cir. 1983) ............................................................ 15, 19

Shipman v. R.K.O Radio Pictures,
   100 F.2d 533 (2d Cir. 1938) ...................................................................... 7

Shwarz v. U.S.,
   234 F.3d 428 (9th Cir. 2000) ..................................................................... 8

Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.,
   562 F.2d 1157 (9th Cir. 1977) ................................................................... 9

Silicon Knights v. Crystal Dynamics,
   983 F. Supp. 1303 (N.D. Cal. 1997) ................................................... 23, 24

Sony Corp. v. Universal City Studios, Inc.,
   464 U.S. 417 (1984) .................................................................................. 7

Steckman v. Hart Brewing, Inc.,
   143 F.3d 1293 (9th Cir. 1998) ................................................................... 8

Sybersound Records, Inc. v. UAV Corp.,
   517 F.3d 1137 (9th Cir. 2008) ........................................................... 20, 22

Walker v. Time Life Films, Inc.,
   784 F.2d 44  (2nd Cir. 1986) ............................................................... 8, 16

Weygand v. CBS, Inc.,
   1997 LEXIS 10613 (C.D. Cal. 1997) ..................................................... 15

Williams v. Crichton,
   84 F.3d 581 (2d Cir. 1996) ...................................................................... 10

Worth v. Universal Pictures, Inc.,
   5 F. Supp. 2d 816 (C.D. Cal. 1997) ........................................................ 21

Zella v. E.W. Scripps Co.,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ............................................ passim

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

31527988_206172_00354

**Statutes**

17 U.S.C. § 106 ................................................................................................... 20

17 U.S.C. § 301(a) .............................................................................................. 20

**Other Authorities**

1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright
   § 1.01[B][1] at 1-12 (2009) ........................................................................ 20

**Rules**

Fed. Rules of Civ. Proc., Rule 12(b)(6) ............................................... 1, 2, 6, 8

Katten
KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31527988_206172_00354

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In his first amended complaint ("FAC"), Plaintiff alleges that the fourth season of Defendants' television series *Heroes* copies elements of Plaintiff's *Carnival of Souls* series of comic books.  In addition to asserting a copyright infringement claim, Plaintiff brings four state law claims against Defendants, each arising out the same alleged misappropriation of Plaintiff's work that forms the basis of Plaintiff's copyright claim.  All of Plaintiff's claims should be dismissed.

The copyright claim fails because the works at issue are not "substantially similar" as a matter of law.  *Heroes* is a one-hour dramatic television series about a group of ordinary people who discover they possess extraordinary powers and the complications and adventures that follow as they attempt to lead normal, ordinary lives in contemporary society.  *Carnival of Souls* is a surrealistic series of three comic books centering on Jazan, a boy who becomes half tiger/half human, and the evil netherworldly environment in which he becomes eternally trapped.  The creative elements in the two works share no similarities apart from the idea of a carnival with some supernatural qualities -- an idea that is not protected by copyright law.  Berkic v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985) ("General plot ideas are not protected by copyright law").  Further, the idea is expressed entirely differently in the two works.  As the lack of substantial similarity in protected expression required for copyright protection is readily apparent from a simple examination of the two works, the Court should dismiss Plaintiff's copyright claim without further expenditure of time and resources by Defendants and this Court.[1]

Plaintiff's state claims fail because they are equivalent to his copyright claim and are therefore preempted by the Copyright Act.  Each of Plaintiff's state law claims

---

[1]  As the works at issue are referenced in the complaint and central to the claims, they are properly before the court under the doctrine of incorporation and are within the scope of the pleadings for purposes of Rule 12(b)(6).  See infra, at III.A.2, p. 8.

1

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1  -- for intentional and negligent interference with prospective economic advantage,

2  unfair competition, and unjust enrichment -- is based upon the alleged encroachment

3  of Plaintiff's exclusive right to profit from the sale or reproduction of his allegedly

4  original work of authorship.  Because this is a "wrong" which is intended to be

5  addressed exclusively by the Copyright Act, these claims are preempted and must be

6  dismissed.   Plaintiff's state law claims also must be dismissed for the independent

7  reason that each fails to state a claim for relief.  Accordingly, Defendants respectfully

8  request that this Court dismiss Plaintiff's claims, with prejudice, pursuant to Rule

9  12(b)(6) of the Federal Rules of Civil Procedure.

10  **II.   FACTUAL BACKGROUND**

11      **A.    The Allegations in the FAC**

12      Plaintiff is the founder of Carnival Comics and the creator of a series of three

13  short comic books entitled *Jazan Wild's Carnival of Souls* ("*Carnival of Souls*").

14  (FAC, ¶ 10.)  Defendants are the creators, developers and producers of the award-

15  winning television series *Heroes*, which was broadcast on NBC for four seasons.

16      Plaintiff alleges that "[t]hroughout the episodes comprising the fourth season of

17  HEROES, defendants . . . infringed on plaintiff's copyright in CARNIVAL OF

18  SOULS and engaged in other unfair and illegal trade practices, misappropriation and

19  conduct by incorporating, without permission, substantial portions of CARNIVAL OF

20  SOULS characters, storylines, themes and settings into HEROES."  (FAC, ¶ 14.)

21      **B.    Summary of the Works at Issue**

22          **1.    *Carnival of Souls* [2]**

23  *Carnival of Souls* is a series of three highly surrealistic comic books that "center

24  around a traveling circus of damned souls, that moves between this world and the

25  next, between reality and dreams." (FAC, ¶¶ 10, 11.)  As is typical in comics, the

26  _____

27  [2]  Color copies of the "e-book" versions of each of Plaintiff's three *Carnival of Souls* comic books, as well as print copies of the works, have been lodged with the Court for

28  its review.  (See Defendants' Notice of Lodging, as well as Request for Judicial Notice ("RJN"), ¶ 2.)

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

2

story is told visually, in garish colors, with exaggerated expressions and often grotesque and animalistic images.  The very limited "dialogue" is written in "balloons" over some of the characters' heads, and the only other text appears in captions below the images.

In Book 1 of *Carnival of Souls*, a boy named Jazan goes to a carnival, loses his mother in a plane crash and is stranded in the jungle and raised by tigers.  Years later, Jazan is tracked by an evil hunter with a beautiful daughter, with whom Jazan falls in love.  Jazan kills the hunter before the hunter has a chance to murder him, but Jazan is then captured by a demonic clown and led away in the clown's carnival caravan.

Book 2 opens with an evil witch assuming the soulless body of the murdered hunter and then flashes back in time to tell the story of two boys, a prince and his best friend, Jexter.  After finding an ancient clown skull while playing with the prince, Jexter begins to experience mysterious visions.  When the prince becomes king, the evil witch convinces him that Jexter's visions are dangerous and the king has Jexter beheaded in a public square.  Jexter's head survives without a body and goes on a murderous rampage.  The story then flashes forward to the carnival, which appears to be run by Jexter, now a full-bodied demonic clown.  Confined to the carnival, Jazan is shown in chains, tormented by visions of his dead mother.  Book 2 ends with the resurrected hunter standing outside the carnival grounds preparing to murder Jazan.

Book 3 opens with a brief shot of the hunter entering the carnival, but then flashes back to tell the story of the carnival's fortune teller, Esmeralda, who, even as a child, had mystical powers.  After the young Esmeralda and her mother visit the carnival, they are captured by the townspeople, tied to a stake and burned alive.  Her mother dies, but Esmeralda escapes and seeks refuge in the carnival.  The story then flashes forward to the hunter ransacking the carnival, locating Jazan in his cage and killing him.  Because Jazan is murdered on carnival grounds, his soul remains alive, but is now condemned to the carnival forever.  A resurrected Jazan then murders the hunter, whereupon the evil witch is ejected from the hunter's body and flees.  Before

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

3

1   returning to the carnival, Jazan shares one final kiss with the hunter's daughter, Tara,

2   who reveals that she is pregnant with Jazan's child.  The demonic clown then hands

3   Tara two tickets to the carnival.  Book 3 ends with Tara's son discovering the carnival

4   tickets in her purse while the two are on a ferryboat outside an unidentified city.

5       **2.**       **Season 4 of** *Heroes* [3]

6       *Heroes* is an hour-long, weekly television series, with an ensemble cast of fully

7   realized, contemporary characters and extensive dialogue.  *Heroes* is about ordinary,

8   everyday people who discover that they possess extraordinary specialized powers, and

9   the unique complications, adventures and dangers that follow when they try to live

10  uneventful lives.  Ultimately, the heroes must confront the question of who they are

11  and how they should best live their lives and use their powers.

12      Season 4's key characters include:  Claire Bennet, a former high school

13  cheerleader from Texas who is physically indestructible; Noah Bennet, Claire's

14  adoptive father who works for an organization that tracks people with special abilities,

15  but has no such powers himself; Hiro Nakamura, an office worker from Japan who

16  can bend time and space; Matt Parkman, a policeman who can read minds and trap

17  people inside the minds of others; Nathan Petrelli, a congressman who can fly; Peter

18  Petrelli, Nathan's brother, who can absorb the powers of others through touch; and

19  Sylar, a serial killer who robs others of their powers by removing their brains.  In

20  addition to these key characters, Season 4 introduces Samuel Sullivan, the ringmaster

21  of a carnival comprised of other people with special abilities and who himself has

22  special abilities; Lydia, a beautiful fortune teller whose skin reveals the future through

23  tattoos that magically appear on her body; and Emma, a deaf hospital worker with

24  synesthesia.

25      As Season 4 opens, Claire is trying to adjust to life as a normal college student,

26  hoping to keep her special ability hidden from her classmates.  Peter, a paramedic, is

27

28  [3]  Defendants have lodged a set of DVDs of Season 4 of *Heroes* for the Court's review.  (<u>See</u> Defendants' Notice of Lodging, as well as RJN, ¶ 1.)

4

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

secretly using his power to save accident victims.  Hiro is dying from a brain tumor and trying to figure out how to go back in time and save his true love from being killed by Sylar.  These storylines develop simultaneously over the ensuing episodes.

As the season progresses, these storylines are interwoven with a new carnival storyline.  After Samuel, the carnival's ringmaster, learns that his power increases as the number of people with special abilities around him increases, Samuel sets about trying to recruit other "specials" to join his carnival by implying that the carnival is their true family and that they will never fit in the outside world.  Samuel eventually becomes corrupted by his power and, after being spurned by his longtime love, he leads the carnival to Central Park, intending to destroy all of New York City in an act of vengeance against humanity.  In the final episode, Samuel's evil plan is exposed by Noah, Claire, Hiro and Peter.  Before Samuel can demolish New York, Hiro transports all the "specials" away from Samuel, depriving him of his power.  As the season ends, the heroes must once again confront the dissonance between their powers and the lives they want to lead.

**III.  PLAINTIFF'S COPYRIGHT CLAIM SHOULD BE DISMISSED BECAUSE, BASED ON A COMPARISON OF THE WORKS, NO REASONABLE JUROR COULD FIND SUBSTANTIAL SIMILARITY OF PROTECTED EXPRESSION.**

**A.   Legal Standards**

**1.    Standard for Determining a Motion to Dismiss in a Copyright Infringement Action.**

The purpose of copyright protection is "to promote the creation and publication of free expression."  Eldred v. Ashcroft, 537 U.S. 186, 219 (2003); see also Feist Pubs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 344-45 (1991) ("The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts'").  Thus, "[t]he most fundamental axiom of copyright law is that '[n]o author may copyright his ideas." Id. at 349.  Rather,

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

5

copyright law distinguishes "between ideas and expression and makes only the latter eligible for copyright protection." <u>Eldred</u>, 537 U.S. at 219; <u>see also; Harper & Row Publishers, Inc. v. Nation Enter.</u>,  471 U.S. 539, 547 (1985) ("The copyright is limited to those aspects of the work termed 'expression' – that display the stamp of the author's originality").  Moreover, copyright protection is available only where the expression in two works is "substantially similar." <u>Dr. Seuss Enter., L.P. v. Penguin Books USA</u>, 109 F.3d 1394, 1398 (9th Cir. 1997) ("'substantial similarity' refers to similarity of expression, not merely similarity of ideas or concepts").

A court may dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted where there is no similarity of protected expression between the plaintiff's and defendant's works.[4]  Indeed, for more than 60 years, courts in the Ninth Circuit have dismissed copyright claims at the pleading stage after comparing the works at issue and determining that there is no substantial similarity between them within the meaning of the Copyright Act. <u>Christianson v. West Pub. Co.</u>, 149 F.2d 202, 203 (9th Cir. 1945) (dismissal based on comparison of two maps); <u>Zella v. E.W. Scripps Co.</u>, 529 F. Supp. 2d 1124, 1139 (C.D. Cal. 2007) (Collins, J.) (dismissal based on comparison of plaintiffs' treatment for television show and defendants' television show); <u>Campbell v. Walt Disney Co.</u>, -- F. Supp. 2d --, 2010 WL 2489189, at *5 (N.D. Cal. May 7, 2010) (dismissal based on comparison of plaintiff's screenplay and defendants' motion picture); <u>Capcom Co., Ltd. v. MKR Grp., Inc.</u>, 2008 WL 4661479, at *11

---

[4] Dismissal is proper when the complaint lacks a cognizable legal theory, or fails to allege sufficient facts to establish the elements of a valid claim for relief.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988).  Indeed, where a plaintiff fails to allege a plausible claim, a motion to dismiss must be granted.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007).   Leave to amend may be denied when the court determines that the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

31527988_206172_00354

1  (N.D. Cal. Oct. 20, 2008) (dismissal based on comparison of plaintiffs' video game

2  and defendant's motion picture); <u>Lake v. Columbia Broad. Sys.</u>, 140 F. Supp. 707,

3  708-09 (S.D. Cal. 1956) (dismissal based on comparison of plaintiff's book and a

4  script of defendants' radio program).[5]

5  While not every copyright infringement claim is appropriate for determination

6  on the pleadings, a motion to dismiss should be granted where, based on a comparison

7  of the works, no reasonable jury could find substantial similarity.[6] <u>Zella</u>, 529 F. Supp.

8  2d at 1131 ("If after examining the works themselves, this Court determines that there

9  is no substantial similarity, then the plaintiff here can prove no facts in support of his

10 claim which would entitle him to relief – the standard for dismissal under Rule

11 12(b)(6)").[7] Discovery is unnecessary, as "discovery would not change the fact that

12 the two works lack any concrete or articulable similarities." <u>Funky Films</u>, 462 F.3d at

13 1077; <u>see also</u>, <u>Nelson</u>, 873 F.2d at 1144 (affirming dismissal based on lack of

14 similarity where trial court denied discovery).

---

15 [5] Courts in other circuits have ruled similarly. <u>See, e.g., Peter F. Gaito Architecture,
16 LLC v. Simone Devel. Corp.</u>, 602 F.3d 57, 69 (2d Cir. 2010) (dismissal of copyright
   claim after comparing plaintiffs' and defendants' architectural designs and finding no
17 substantial similarity); <u>Nelson v. PRN Prods., Inc.</u>, 873 F.2d 1141, 1143-44 (8th Cir.
   1989), <u>cert denied</u>, 493 U.S. 994 (1989) (dismissal of copyright claim after reviewing
18 lyrics of parties' musical works and finding no substantial similarity); <u>Shipman v.
   R.K.O Radio Pictures</u>, 100 F.2d 533, 538 (2d Cir. 1938) (affirming  dismissal of
19 copyright claim after finding no substantial similarity between plaintiffs' play and
20 defendants' motion picture).

21 [6] Indeed, to allow such meritless claims to linger would not only be unfair to
   defendants, but would also undermine the Copyright Act's goal of promoting
22 "society's ... interest in the free flow of ideas, information and commerce." <u>Sony
   Corp. v. Universal City Studios, Inc.</u>, 464 U.S. 417, 429 (1984).

23 [7] Even where courts dismiss on summary judgment, they often do so based on a
24 comparison of the works, without other evidence. <u>Funky Films v. Time Warner
   Entm't Co.</u>, 462 F.3d 1072, 1077 (9th Cir. 2006); <u>see also</u>, <u>Mallery v. NBC Universal,
25 Inc.</u>, No. CV-07-2250, 2007 U.S. Dist. LEXIS 88960, at *5-6 (S.D.N.Y. Dec. 3, 2007)
   (court <i>sua sponte</i> converting motion to dismiss into motion for summary judgment
26 and dismissing copyright infringement claims after finding no substantial similarity).
27 While Defendants strongly believe that this case should be resolved on this motion, if
   the Court declines to grant the motion, Defendants reserve the right to bring a motion
28 for summary judgment at a later time.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

31527988_206172_00354

2.      **Standard for Consideration of the Works Under the Doctrine of Incorporation by Reference.**

In a copyright action, where, as here, the works that form the basis of the infringement claim are referenced in the complaint, the works are properly before the court under the doctrine of incorporation by reference.  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (in ruling on Rule 12(b)(6) motion, court properly considered contents of documents referenced in, but not attached to, amended complaint); Knievel v. ESPN, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (court properly considered web pages in surrounding website under the "incorporation by reference" doctrine in ruling on motion to dismiss defamation claim).

Such documents are not "outside the pleading," and thus may be considered at the 12(b)(6) stage without converting the motion into one for summary judgment. Zella, 529 F. Supp. 2d at 1131, n. 6, citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 n. 16 (11th Cir. 1999).  In Zella, Judge Collins applied the doctrine of incorporation by reference to consider DVDs of the *Rachael Ray* television show submitted by defendants in conjunction with their motion to dismiss.  Comparing plaintiff's treatment to the DVDs, she determined that no reasonable jury could find substantial similarity.  Zella, 529 F. Supp. 2d at 1128.  See also, Hogan v. DC Comics, 983 F. Supp. 82, 84 (S.D.N.Y. 1997) (concluding that a court must evaluate underlying works referenced in the complaint, even though they are not attached to the complaint, to determine if plaintiff has sufficiently stated a claim for copyright).[8]

Thus, because the works are properly before the Court, and a comparison of Plaintiff's *Carnival of Souls* trilogy and Defendants' *Heroes* clearly shows that no

---

[8]   Moreover, in ruling on a motion to dismiss, although the court should accept all well-pleaded factual allegations as true, it need not accept as true allegations contradicted by documents referenced in the complaint or by facts which may be judicially noticed.  Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998); Shwarz v. U.S., 234 F.3d 428, 435 (9th Cir. 2000).  Indeed, "in copyright infringement cases the works themselves supersede and control contrary descriptions of them."  Walker v. Time Life Films, Inc., 784 F.2d 44, 52 (2nd Cir. 1986).

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31527988_206172_00354

reasonable juror could find substantial similarity under the applicable authorities, Defendants' Motion to Dismiss should be granted.[9]

> **3.      The Ninth Circuit's Extrinsic Test Requires the Court to Compare the Detailed Elements of the Works, After Filtering Out Unprotected Elements, Such as General Story Ideas and *Scenes a Faire*.**

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Feist</u>, 499 U.S. at 361.  The second prong – the one at issue in this motion – requires that Plaintiff allege that "the infringer had access to [his] copyrighted work and that the works at issue are substantially similar in their protected elements." <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 822 (9th Cir. 2002).  Even if access is present, the plaintiff cannot state a claim if substantial similarity is lacking. <u>Zella</u>, 529 F. Supp. 2d at 1133 (citing cases).[10]  The absence of substantial similarity requires dismissal.

---

[9]   On a motion to dismiss, it is also proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201.  <u>Zella</u>, 529 F. Supp. 2d at 1128.  "In the context of copyright claims, the Court may take judicial notice of generic elements of creative works." <u>Id.</u> at 1129.  Accordingly, Defendants request that the Court take judicial notice of the generic nature of certain elements of Plaintiff's work as well as certain commonly-known prior works incorporating these elements; e.g., that carnivals often travel from town to town, contain characters such as ringmasters, fortune tellers, and clowns; and that the surrealistic depiction of carnivals is prevalent in well-known prior works such as Ray Bradbury's 1962 novel and subsequent feature film *Something Wicked This Way Comes*.  (<u>See</u> Defendants' RJN.)

[10]   For purposes of this Motion only, Defendants do not address access, other than to note that Plaintiff has not alleged any facts demonstrating that Defendants viewed his work.  Regardless, "[n]o amount of proof of access will suffice to show copying if there are no similarities." <u>Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.</u>, 562 F.2d 1157, 1172 (9th Cir. 1977); <u>see also</u>, <u>Funky Films</u>, 462 F.3d at 1081 (rejecting plaintiff's request for additional discovery because evidence of access would "not change the fact that the two works lack any concrete or articulable similarities"); <u>Cavalier</u>, 297 F.3d at 822-28 (even where defendants concede access, lack of substantial similarity defeats copyright infringement claim); <u>Kouf v. Walt Disney Pictures & Television</u>, 16 F.3d 1042, 1043-46 (9th Cir. 1994) (same).

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

9

31527988_206172_00354

To assess substantial similarity as a matter of law, the Court must compare the works at issue applying the Ninth Circuit's objective "extrinsic test." Funky Films, 462 F.3d at 1077. This comparison "focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two works." Id. "In applying the extrinsic test, this court compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." Id.[11]

Notably, the Court "must take care to inquire only whether the protectable elements, standing alone, are substantially similar." Id. This requires the Court to "filter out and disregard the non-protectable elements in making its substantial similarity determination." Id. "Protectable expression includes the specific details of an author's rendering of ideas," not the ideas themselves. General plot lines and *scenes a faire*[12] "are not protectable" under copyright law. Id.

After filtering out unprotectable elements, "[i]f the court determines that no reasonable jury could find that the works are substantially similar, or if it concludes

---

[11] The Ninth Circuit has repeatedly affirmed dismissals of copyright claims for failure to meet the extrinsic test, even where works share a number of similar ideas or plotlines (indeed, despite far greater similarities than those at issue here). See e.g., Funky Films, 462 F.3d at 1081 (HBO series *Six Feet Under*; no protection for similar plots involving "the family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business"); Kouf, 16 F.3d 1042 at 1044-45 (Disney movie *Honey, I Shrunk The Kids*; no protection for similar plots of shrunken kids and the "life struggle of kids fighting insurmountable dangers"); Berkic, 761 F.2d at 1293 (novel and movie *Coma*; no protection for similar plots of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants" and the general story of the "adventures of a young professional who courageously investigates and finally exposes, the criminal organization.")

[12] *Scenes a faire* are sequences of events that "flow naturally from generic plot-lines" Funky Films, 462 F.3d at 1081; Rice v. Fox Broad. Co., 330 F.3d 1170, 1177 (9th Cir. 2003) ("perform and reveal" sequence is unprotectable *scenes a faire* since there are "only a finite number of ways to reveal the secrets behind magic tricks"); Williams v. Crichton, 84 F.3d 581, 589 (2d Cir. 1996) (court holding "electrified fences, automated tours, dinosaur nurseries, and uniformed workers . . . are classic *scenes-a-faire* that flow from the uncopyrightable concept of a dinosaur zoo").

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

10

1   that the similarities pertain only to unprotected elements of the work, it is appropriate

2   for the court to dismiss the action because, as a matter of law, there is no copyright

3   infringement." Zella, 529 F. Supp. 2d at 1131.[13]

4   **B.    Season 4 of *Heroes* Is Not Substantially Similar to *Carnival of Souls***

5   **As a Matter of Law.**

6       In accordance with the Ninth Circuit's extrinsic test, the following discussion

7   compares the "plot, themes, dialogue, mood, setting, pace, characters, and sequence

8   of events" in the two works, and demonstrates that the works lack any meaningful

9   similarity.  Funky Films, 462 F.3d at 1077.

10   **1.    Plot and Sequence of Events**

11       According to Plaintiff, the plot of *Carnival of Souls* "centers around a traveling

12   circus of damned souls, that moves between this world and the next, between reality

13   and dreams." (FAC, ¶ 11.)  In Book 1, a boy, Jazan, goes to a carnival, loses his

14   mother in a plane crash, is stranded in the jungle and raised by tigers, is then tracked

15   by an evil hunter, and is eventually captured by a demonic clown who runs a carnival

16   of apparently damned souls.  Book 2 flashes back to tell the origin story of the

17   carnival and its demonic ringmaster, Jexter, and then returns (ostensibly to the

18   present) to show Jazan struggling to accept his fate as a prisoner of the carnival.  Book

19   3 again opens with a flashback, this time to recount how the fortuneteller, Esmeralda,

20   came to join the carnival, before returning to show the climactic battle between Jazan

21   and the hunter.

22       Season 4 of *Heroes*, in contrast, has the construct of an epic saga with myriad

23   storylines, all of which are simultaneously occurring.  By way of example only,

24   Claire's effort to be a typical college student is interrupted by her roommate's

25

26   ---
   [13]  Copyright claims recently dismissed under 12(b)(6) in this District include Musero,

27   III v. Mosaic Media Group, Inc., 10-cv-1748 PA (JCx) (C.D. Cal. August 9, 2010) (no
   substantial similarity between plaintiff's screenplay and *Bruno* movie); and Scott v.

28   Meyer, 09-cv-6076 ODW (RZx) (C.D. Cal. November 24, 2009) (no substantial
   similarity between plaintiff's novel and *Twilight* saga novel).

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

apparent suicide and its aftermath.  Hiro, having learned that he has a terminal illness, sets out to right the mistakes of his past.   Peter's effort at a normal life as a paramedic is shattered by the arrival of the disabled Emma.  Sylar's acquired abilities begin to manifest as Nathan struggles to maintain his identity, and Sylar's consciousness, trapped in Matt Parkman's mind, taunts him and seeks out his body.   During the course of the season, the storyline of the carnival led by the charismatic Samuel also emerges.  As noted above, Samuel attempts to destroy all of New York City, but his plan is thwarted when Hiro transports all of the specials away from Samuel, depriving Samuel of his destructive abilities.

Clearly, the overall stories in the two works are not at all similar.  Nor are the carnival plotlines.  In *Carnival of Souls*, the carnival's inhabitants are condemned to a macabre existence under the control of a demonic clown.  Jazan, the comic's protagonist, visits the carnival as a child, and is imprisoned there years later by the clown.  The story suggests that Jazan's son will later come to the carnival and will himself become a prisoner of the carnival, in much the same way that Jazan came to the carnival with his own mother and ended up imprisoned there, in an eternal cycle of the damned.  The carnival plotline in *Heroes* is completely different.  In *Heroes*, Samuel, the leader of the carnival tries to enlarge the carnival's community of people with special abilities and to thereby increase his own power.  When his love interest spurns him and refuses to join the carnival, he goes on a destructive rampage, first sinking an entire town with an earthquake and then attempting to wreak destruction on New York City.  The heroes use their various powers to thwart Samuel's efforts and save the city.

Thus, the stories in the two works at issue, whether considered in their entirety or comparing only the two carnival plotlines, are entirely different.  Indeed, aside from their use of the unprotectable plot device of a traveling carnival,[14] there is no similarity between the plots or sequences of events in *Heroes* and *Carnival of Souls*.

---

[14]   A traveling carnival is an unprotectable, well-worn idea.  (<u>See</u> Defendants' RJN.)

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## 2.      Characters

Nor is there any similarity in the characters in the two works.  The main characters in *Carnival of Souls* are Jazan, a plane crash survivor who is raised by tigers and takes on tigerlike qualities; Jexter, a demonic clown who is the ringmaster of the titular "carnival of souls" and is prone to self-decapitation; Esmeralda, a shrewish fortuneteller (also depicted in a flashback as a young girl whose mother is murdered by angry mob); Victor, a crazed hunter intent on tracking and murdering Jazan; and Tara, the hunter's daughter who falls in love with Jazan.

None of these characters appears in *Heroes*.  Indeed, *Heroes* does not contain a clown character at all, let alone use a clown as a primary character, nor is there any character in *Heroes* remotely comparable to *Carnival of Souls*' other main character, the tigerboy, Jazan.  Moreover, the key characters in *Heroes* bear no resemblance to any character in *Carnival of Souls*.  *Carnival of Souls* has no college student, office worker, paramedic, policeman, congressman, professor or deaf hospital worker, to name just a few. Nor do the characters in *Carnival of Souls* possess the various special abilities -- e.g., synesthesia, the ability to bend time and space, or to absorb the powers of others through touch -- of characters  in *Heroes*.  The interpersonal relationships among the characters in *Heroes* are also absent from *Carnival of Souls*.  Indeed, virtually every meaningful factor relevant to character is different in the two works.

Even characters who may, at first blush, appear to have some superficial similarity are not similar at all.[15]  Aside from being the leaders of their respective carnivals, *Heroes*' charming ringmaster Samuel bears no relation in deed or appearance to *Carnival of Souls*' demonic clown, Jexter.  Moreover, unlike Samuel,

---

[15]   It is particularly difficult to establish copyright infringement of characters.  Here, the characters are not similar at all, much less sufficiently similar to state a copyright claim.  <u>Hogan</u>, 48 F. Supp. 2d at 310 (character types do not merit copyright protection); <u>Zella</u>, 529 F. Supp. 2d at 1134; <u>Cavalier</u>, 297 F.3d at 824 (characters which naturally flow from a "basic plot idea" are "scenes-a-faire" not protected by copyright); <u>Berkic</u>, 761 F.2d at 1293 (same).

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1  there is no indication in Plaintiff's work that Jexter's power increases as new members

2  are added to his "carnival of souls."  The fortune tellers in the two works are also

3  profoundly different, with *Carnival of Souls*' shrewish Esmeralda predicting the future

4  through a standard crystal ball, whereas Lydia, *Heroes*' seductive soothsayer, reveals

5  the future by exposing tattoos that magically appear on her bare back.  Finally, Victor,

6  the murderous hunter in *Carnival of Souls* bears no relation to Noah, the tracker of

7  people with special abilities in *Heroes*.  Although each has a beautiful daughter,

8  Victor is portrayed as an irrational villain with an insatiable bloodlust, whereas Noah

9  is shown to be a loving father motivated by a desire to protect his daughter and

10  prevent evil specials like Samuel from harming innocent members of society.

### 3.    Setting, Themes, Mood, and Pace

12  Season 4 of *Heroes* takes place in a number of real geographic locations such as

13  Tokyo, India, Washington, D.C., Los Angeles, New York City and Texas.  *Carnival*

14  *of Souls*, on the other hand, is set in an unnamed jungle location, a non-descript castle

15  and medieval town, an airplane and a ferryboat.  Although Plaintiff alleges that the

16  final scene in Book 3 is set in New York City, and the skyline rising behind the

17  ferryboat in the book's final scene is suggestive of New York City, nothing in the

18  comic takes place there and the city skyline is clearly *scene a faire*. Aside from the

19  presence of carnivals, there is no similarity in the settings of the two works.

20  The themes, mood and pacing of the two works are drastically different as well.

21  *Heroes* is a weekly dramatic television series about ordinary people leading seemingly

22  ordinary lives who discover that they possess extraordinary specialized powers, and

23  the unique complications, adventures and dangers that follow.  Over the course of

24  Season 4, drama builds as the "good" heroes face off against the "evil" heroes, with

25  good ultimately triumphing over evil.  By contrast, *Carnival of Souls* is a highly

26  surrealistic trilogy of comic books depicting cartoonish characters condemned to a

27  circus of the damned, whose lives are far from ordinary and where evil generally

28  triumphs over good.  Furthermore, whereas Season 4 of *Heroes* develops its story

14

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1  gradually over 19 hours of programming, the storytelling in the *Carnival of Souls*

2  comic books is quick and abrupt, and told in pictures that can be "read" in a few

3  minutes.  Thus, beyond the unprotectable carnival idea, there are no similarities in the

4  setting, themes, mood or pace of the two works.

5             **4.**     **Dialogue**

6        There is no similarity between the dialogue in the two works.  In fact, there is

7  no dialogue at all in *Carnival of Souls*.  Instead, snippets of text primarily consisting

8  of uncouth exclamations and banal puns float above the characters' heads in an obtuse

9  and confusing fashion.  By contrast, Season 4 of *Heroes* is full of dialogue that is

10  typical of human speech and delivered by human characters in a realistic fashion.

11  Nowhere in his FAC does Plaintiff point to any example of similar dialogue between

12  the two works.  The reason for this omission is obvious:  none exists.

13             **5.**     **Random Purported Similarities**

14        In paragraphs 15 to 20 of his FAC, Plaintiff lists random, cherry-picked

15  incidents from Season 4 of *Heroes* that he alleges are similar to *Carnival of Souls*.

16  Plaintiff's randomly selected pairings cannot establish substantial similarity, as

17  random similarities are "inherently subjective and unreliable." <u>Litchfield v. Spielberg</u>,

18  736 F.2d 1352, 1356-57 (9th Cir. 1984) (court must be "particularly cautious where,

19  as here, the list emphasizes random similarities scattered throughout the works").  The

20  "juxtaposition of scenes occurring at different points in the works do not establish

21  substantial similarity of the essential 'sequence of events.'" <u>Weygand v. CBS, Inc.</u>,

22  1997 LEXIS 10613, at *23 (C.D. Cal. 1997); <u>See v. Durang</u>, 711 F.2d 141, 144 (9th

23  Cir. 1983).  The random similarities here are not, in fact, similar; they are either

24  mischaracterizations of the works, patently false comparisons, and/or unprotectable

25  *scenes a faire*.[16]

26

27  [16]      To the extent not addressed hereafter, the purported similarities alleged in

28  paragraphs 15 - 20 of the FAC have already been addressed within the discussions of plot, sequence of events, character, settings, theme, mood and pace above.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

- A "dark character seeks to make his carnival more powerful by recruiting new members with special abilities." (FAC, ¶ 15.)  This is a blatant mischaracterization of the two works.[17]  In Season 4 of *Heroes*, Samuel (not the carnival) becomes more powerful as he convinces more individuals with special abilities to join the carnival. In *Carnival of Souls*, there is no indication that either Jexter, his carnival, or anyone else gains power by getting characters with special abilities to join the carnival.

- A "carnival that can magically appear and disappear in order to collect its protagonists." (FAC, ¶ 16.)  The carnival in *Heroes* exists in the real world and travels to real cities like Tokyo and New York.  On the other hand, by Plaintiff's own admission, the carnival in *Carnival of Souls* "moves between this world and the next, between reality and dreams."   Even if Plaintiff's description were accurate, however, the idea of a carnival that appears and disappears is not protectable.[18]

- A "young boy enter[s] the carnival and receive[s] a prophecy that changes [his] li[fe]" and he later "develops special abilities." (FAC, ¶ 16.)  The purported "prophecy" scenes are not similar in any way.  In fact, there is no "prophecy" in *Carnival of Souls*.  Instead, a young Jazan is merely told by the evil clown (not a fortune teller) to "come see me in about 15 years."  By contrast, in *Heroes*, Hiro tells his friend Ando that he was told by a fortune teller that he "would be a powerful hero."  Further, while Jazan develops tiger-like traits after being raised in the jungle, he has no distinct special ability, whereas Hiro can bend time and space.  Of course, even if Plaintiff's description were correct, the idea of receiving a "prophecy" at a carnival that features a fortune teller is classic *scene a faire*.

- "Carney or Hero run[s] through a remote wooded area while being chased by an angry mob" and is saved by the carnival. (FAC, ¶ 16.)  Running through woods while

---

[17]   As noted above in footnote 7, "in copyright infringement cases the works themselves supersede and control contrary descriptions of them."  Walker, 784 F.2d at 52.

[18]  Moreover, the characters in *Heroes* locate the carnival by using special compasses provided to them by Samuel, whereas no compass or similar device is found anywhere in *Carnival of Souls*.

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

being chased by a mob is a textbook example of a *scene a faire*.  Moreover, the circumstances of flight in the two works are completely different.  In *Heroes*, Nathan, running from the police because he has no recollection of committing the murders of which he has been accused, is saved by the appearance of the carnival.  *In Carnival of Souls*, Jazan is captured and returned to (not saved by) the carnival.

- A "protagonist enters the house of mirrors ... sees his mother, ... causing him to cry out in pain" and an evil character later "blast[s] electricity out of his hands." (FAC, ¶ 17).  Here, again, Plaintiff attempts to create a supposedly meaningful similarity when there is none, as the commonplace idea of a house of mirrors at a carnival is expressed entirely differently in the two works.  In *Carnival of Souls*, Jazan sees the image of his mother transform into the image of the evil clown ringmaster.  In *Heroes*, Nathan sees in the mirror the many past murders that Sylar has committed, only one of which is Sylar's own mother; moreover, Sylar's victims do not alter their appearance or identity.  As for the bolts of electricity, in *Heroes*, Nathan/Sylar unwittingly shoots electricity out of his hands at a policeman while in the house of mirrors; in *Carnival of Souls*, the hunter (not Jazan) intentionally destroys a mirror with electricity.

- "Identical" dreadlock-clad Voodoo witchdoctors.  (FAC, ¶ 18.)  Voodoo witchdoctors are *scenes a faire*; further, the characters appear only extremely briefly in each work as "extras" and are not developed or individualized at all.  Moreover, the alleged "witchdoctor" in *Heroes* is not a witchdoctor at all, but rather a special with the ability to manipulate the memories of others.

- Characters experiencing nightmarish visions and awaking in a panicked state. (FAC, ¶ 19.)  A nightmare is another obvious example of an unprotectable *scene a faire*.  Literally thousands of works no doubt feature a character waking from a nightmare in panic; indeed, to suggest that such a generic idea is protectable defies credulity.  Further, the nightmares in the two works appear in completely different contexts and involve completely different visions.

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

- An image of a hunter looking through a rifle sight at his daughter. (FAC, ¶ 19.) This is another example of a tangential, momentary scene that Plaintiff mischaracterizes.  In *Heroes*, Noah, serving as Claire's back-up, observes her through a rifle sight from a nearby hillside as she speaks with Samuel outside the carnival.  In *Carnival of Souls,* the murderous hunter is shown targeting Jazan in his rifle sight moments before shooting and wounding him in the neck.  Further, an image of a character framed in a rifle sight is standard *scene a faire*.[19]

- Stories that end in New York City with crowds running away in panic.  (FAC, ¶ 20.)  Plaintiff alleges that the ending of the online graphic novel version of *Heroes* [20] is substantially similar to the conclusion of *Carnival of Souls* in that both supposedly conclude in New York with the carnival being destroyed and crowds running away in panic.  A crowd running from a scene of destruction in panic is, of course, standard *scene a faire*.  Moreover, the purported carnival destruction in *Heroes* does not appear at the end of the online graphic novel, though it does occur in New York.  However, the carnival in *Carnival of Souls* is never in New York and no action takes place there.  Rather, the work ends with Tara and Jazan's son peacefully on a ferryboat in front of a city skyline that could be New York.

- Images where *Heroes* is purportedly "directly storyboarded" from *Carnival of Souls.*  (Exhibits to FAC).  The exhibits to the FAC pair purportedly similar scenes from Plaintiff's comics with still shots from the *Heroes* series. However, the paired images are either not similar at all or so generic as to be meaningless.  Plaintiff asserts, for example, that the carnival images in Exhibit 1B are "virtually identical" (FAC, ¶ 15).  Yet, but for the fact they are both carnivals, they could hardly be more

---

[19]  See e.g., Mallery, 2007 U.S. Dist. LEXIS 88960, at * 21 (no protectable expression where camera is tightly zoomed in on character's eyes; "absurd results" would follow from holding otherwise.)

[20] It should be noted that Plaintiff has not alleged that the online graphic novel version of *Heroes* is a basis for his copyright claim.  (See FAC, ¶ 14 ("Throughout the **episodes** comprising the fourth season of HEROES, defendants . . . infringed on plaintiff's copyright in CARNIVAL OF SOULS" (Emphasis added)).

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

18

Katten

KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    different.[21]  The other visual comparisons in Plaintiff's exhibits are equally lacking in

2    protectable similarity.[22]   In fact, the exhibits refute, rather than support, Plaintiff's

3    claim.

4          In sum, *Heroes* and *Carnival of Souls* share no similarities other than the

5    unprotectable common idea of a carnival.  Because the purported "similarities"

6    alleged in the FAC either do not exist or are wholly generic and *scenes a faire*, they

7    cannot satisfy the extrinsic test and Plaintiff's copyright infringement claim fails as a

8    matter of law.  <u>See e.g.</u>, <u>Mallery</u>, 2007 U.S. Dist. LEXIS 88960, at *25 (pair of

9    divination artists claimed that Season 1 of *Heroes* infringed their copyrighted film,

10   paintings and novel; court compared the works and ruled as a matter of law that no

11   reasonable trier of fact could find the works substantially similar.); and cases cited at

12   fn 11, <u>supra</u>.

13   **IV.   PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY THE**

14        **COPYRIGHT ACT**

15        Because Plaintiff's copyright infringement claim fails as a matter of law,

16   Plaintiff's second through fifth claims, each of which seeks relief based upon the same

17   allegations of wrongful conduct that are insufficient to ground Plaintiff's copyright

18   claim, also fail as a matter of law.  However, even if this Court were to decline to

19   dismiss Plaintiff's copyright infringement claim at this pleading stage of the litigation,

20   Plaintiff's second through fifth claims still must be dismissed because they are

21

22   [21]   Plaintiff's carnival is set in daylight in an open, barren field; it has an entrance
     sign that says "Welcome to The Freak Show"; multiple tents; and a clown, barker, and
23   man on stilts; the standard ferris wheel is only partially visible. In the *Heroes* shot, the
     carnival is shown at night in an urban setting, with tall office buildings in the back; it
24   has no entrance sign, but signs that say "Roll a Ball" and "tickets"; no tents, clowns or
     other characters are visible, and the ferris wheel is very prominent and highly lit.

25   [22]   For example, Plaintiff's cartoonish middle-aged, stocky barker in top hat and
     morning coat bears no resemblance to *Heroes*' thin, hatless young man in
26   contemporary clothes (Exhibit 1C).  Other of Plaintiff's comparisons -- e.g., that his
     cartoon drawing of a scantily dressed woman staring up is supposedly similar to the
27   head of a real woman staring sideways (Exhibit 2A), or that Plaintiff's elaborate
     drawing of an eye is supposedly similar to a staring man in a T-shirt (Exhibit 2B) --
28   border on the ludicrous.

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    unquestionably preempted by the Copyright Act.

2    **A.    Standard for Preemption Under the Federal Copyright Act.**

3    The Ninth Circuit employs a two-part test to determine whether the Copyright

4    Act preempts particular state law claims.  Preemption occurs when: (1) the work at

5    issue comes within the subject matter of copyright; and (2) the rights granted under

6    state law are equivalent to those protected by the Act.  <u>Laws v. Sony Music Entm't,</u>

7    <u>Inc.</u>, 448 F.3d 1134, 1137-38 (9th Cir. 2006); 17 U.S.C. § 301(a).[23]

8    The Copyright Act provides a copyright owner with the exclusive rights of

9    reproduction, preparation of derivative works, distribution and display.  17 U.S.C.

10   § 106.  Thus, state law claims arising from unauthorized reproduction or distribution

11   of a plaintiff's copyrighted work are preempted.  <u>Downing</u>, 265 F.3d at 1003; <u>Del</u>

12   <u>Madera</u>, 820 F.2d at 976-77.  To avoid preemption, "the state cause of action must

13   protect rights which are qualitatively different from the copyright rights."  <u>Id</u>.  Where

14   state law claims are "merely copyright claims dressed up to look like state law claims"

15   and the state law claims are indistinguishable from a copyright infringement claim,

16   dismissal is proper.  <u>Sybersound Records, Inc. v. UAV Corp.</u>, 517 F.3d 1137, 1150

17   (9th Cir. 2008).[24]

18   As discussed below, Courts have often dismissed state law claims for

19   interference with contract, unfair competition and unjust enrichment as preempted by

20   the Copyright Act where, as here, the claims are based on alleged unauthorized use of

21   the plaintiff's work.[25]

---

22   [23]   <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1003 (9th Cir. 2001); <u>Kodadek</u>
23   <u>v. MTV Networks</u>, 152 F.3d 1209, 1213 (9th Cir. 1998); <u>Del Madera Prop. v. Rhodes</u>
24   <u>& Gardner</u>, 820 F.2d 973, 976 (9th Cir. 1987) (overruled on other grounds).

24   [24]   "[I]f under state law the act of reproduction, performance, distribution, or display,
25   no matter whether the law includes all such acts or only some, will *in itself* infringe
26   the state-created right, then such right is pre-empted." 1 Melville B. Nimmer & David
     Nimmer, Nimmer on Copyright § 1.01[B][1] at 1-12 (2009).

27   [25]   Moreover, when a court dismisses a claim as preempted, the dismissal should be
28   without leave to amend because amendment would be futile.  <u>See</u> <u>Idema v.</u>
     <u>Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129, 1193 (C.D. Cal. 2001); <u>see also</u>, <u>Montz v.</u>

20

31527988_206172_00354

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

**B.** **Plaintiff's Second and Third Claims for Intentional and Negligent Interference with Prospective Economic Advantage are Preempted by Federal Copyright Law.**

Courts in the Ninth Circuit have consistently held economic interference claims to be preempted where they seek redress for alleged violations of rights equivalent to those addressed by the Copyright Act. See id. at 1151.[26] Where claims of intentional or negligent interference are based on the alleged encroachment on one's exclusive right to profit from the sale or reproduction of one's original work(s) of authorship, such claims are preempted because this is a "wrong" that "is intended to be exclusively addressed by the federal Copyright Act." Idema, 162 F. Supp. 2d at 1193.

Here, the FAC's second and third claims allege that it is Defendants' purportedly infringing conduct that interfered with his probability of future economic benefit. (FAC, ¶¶ 29, 36.) As the alleged lost benefits flow from the opportunity to exploit Plaintiff's copyright, Plaintiff's economic interference claims are preempted.

**C.** **Plaintiff's Fourth Claim for Unfair Competition is Preempted by Federal Copyright Law.**

The Ninth Circuit has made clear that where a plaintiff's Section 17200 claim is based on rights equivalent to those protected by the Copyright Act, the claim is preempted. See Kodadek, 152 F. 3d at 1213. Where a plaintiff alleges copyright

---

Pilgrim Films & Television, Inc., 606 F.3d 1153, 1160 (9th Cir. 2010) (affirming trial court's dismissal of preempted state law claims without leave to amend).

[26]   See also, Worth v. Universal Pictures, Inc., 5 F. Supp. 816, 822 (C.D. Cal. 1997) (Baird, J.); Motown Record Corp. v. George A. Hormel & Co., 657 F. Supp. 1236, 1240 (C.D. Cal. 1987); Idema, 162 F. Supp. 2d at 1193; 1 Nimmer § 1.01[B][1][a][ii] at 1-18 (2009); cf., Maheu v. CBS, Inc., 201 Cal.App.3d 662, 678 (1988) ("Insofar as unauthorized reproduction, distribution, performance or display causes the plaintiff to lose the benefits which would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference would not appear to differ qualitatively from rights under copyright.")

MOTION TO DISMISS FIRST AMENDED COMPLAINT

31527988_206172_00354

1    infringement as the improper business act underlying an unfair competition claim, the

2    claim is preempted.  Sybersound, 517 F.3d at 1152.

3          In the FAC's fourth claim for relief, Plaintiff alleges that "Defendants have

4    engaged in unlawful business acts or practices by committing acts including copyright

5    infringement . . . in an effort to gain unfair competitive advantage over [Plaintiff]."

6    (FAC, ¶ 42.)[27]   Plaintiff further alleges that Defendants have "taken commercial

7    advantage of [his] investment in his copyrighted works."  (FAC, ¶ 45.)

8          Because copyright infringement is the only improper business act alleged by

9    Plaintiff as a basis for his Section 17200 claim, his fourth claim for violation of

10   California's unfair competition law is preempted by the Copyright Act.

11   **D.      Plaintiff's Fifth Claim for Unjust Enrichment is Preempted by**

12        **Federal Copyright Law.**

13         Claims for unjust enrichment arising out of a defendant's use of plaintiff's

14   copyrighted material are deemed preempted because they are based upon an

15   "equivalent right" to copyright, i.e., enrichment can only be "unjust" to the extent that

16   plaintiff's intellectual property is taken, and the scope of protection in creative works

17   is determined by federal law, rather than state law.  See Downing, 265 F. 3d at 1003;

18   Del Madera,  820 F.2d at 976-77; 1 Nimmer § 1.01 [B][ 1 ][g] (2009).

19         Plaintiff alleges that "Defendants unjustly received benefits at the expense of

20   [Plaintiff] through their wrongful conduct, including infringement of [Plaintiff's]

21   copyrights, interference with [Plaintiff's] business relationships and other unfair

22   business practices." (FAC, ¶ 50.)  As these alleged wrongs are based on the same

23   purported copyright infringement, Plaintiff's claim is preempted.

24

25

26

27   _____

[27]   Although the FAC also generally refers to other purported "illegal" acts, none are
28   specifically alleged.

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

31527988_206172_00354

**Katten**
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

# V.    PLAINTIFF'S STATE LAW CLAIMS ALSO FAIL TO ALLEGE FACTS SUFFICIENT TO STATE VIABLE CAUSES OF ACTION.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  A complaint that tenders mere "'naked assertions' devoid of 'further factual enhancement'" does not suffice.  Id.  As set forth below, Plaintiff fails to allege sufficient facts to support his state law claims.

## A.    Plaintiff's Interference Claims Fail to Allege an Existing Economic Relationship with a Third Party.

Federal courts in this Circuit have consistently dismissed economic interference claims at the pleading stage where the plaintiff's complaint merely contained conclusory allegations that the defendant's acts interfered with hypothetical relationships, without recitation of specific facts regarding specific relationships.[28]

In this case, Plaintiff alleges merely that he "has and had an expectancy in continuing and advantageous economic relationships with current and prospective purchasers and licensees of CARNIVAL OF SOULS" (FAC, ¶¶ 28, 35), and that, had Defendants not interfered, he "would have initiated, renewed, or expanded contracts and licenses with potential customers, producers and studios to develop CARNIVAL OF SOULS into various media properties."  (FAC, ¶¶ 29, 36.)

Such conclusory allegations of hypothetical interference with hypothetical relationships are insufficient to state a claim.  Plaintiff does not specifically allege that he was in the midst of negotiations with any such potential purchasers, licensees,

---

[28]  See Silicon Knights v. Crystal Dynamics, 983 F. Supp. 1303, 1312 (N.D. Cal. 1997) (dismissing interference claims, noting that "the complaint does not allege that [the plaintiff] was in the midst of negotiations with 3DO, Microsoft, or any other publisher, and that the third party pulled out of the negotiations or awarded business to another because of these alleged acts by Defendants"); Cinebase Software, Inc. v. Media Guar. Trust, 1998 WL 661465, at *9 (N.D. Cal. 1998) (dismissing interference claim where complaint included no facts supporting allegation that plaintiff had existing economic relationships that were damaged by defendants).

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

31527988_206172_00354

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Katten

KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   producers or studios, or that any such third parties pulled out of negotiations or

2   awarded business to another because of the alleged acts of Defendants.  Plaintiff's

3   conclusory allegations, standing alone, cannot ground his interference claims.  See

4   Silicon Knights, 983 F. Supp. at 1312.  Thus, Plaintiff's interference claims are not

5   only preempted by the Copyright Act, they are also subject to dismissal on substantive

6   grounds.

7   **B.   Plaintiff's Negligent Interference Claim Also Fails Because**

8   **Defendants Do Not Owe Plaintiff a Duty of Care.**

9          To plead negligent interference with prospective economic advantage, a

10  plaintiff must allege not only a specific economic relationship, but also facts

11  establishing that defendant owes plaintiff a duty of care.  Lange v. TIG Ins. Co., 68

12  Cal. App. 4th 1179, 1187 (1998).  Such duty may arise pursuant to contract or statute,

13  or may arise out of a "special relationship" between the plaintiff and defendant.

14  Silicon Knights, 983 F. Supp. at 1313; J'Aire Corp. v. Gregory, 24 Cal. 3d 799,

15  804(1979).

16         In his FAC, Plaintiff fails to allege, even in conclusory fashion, that Defendants

17  owed him any duty of care.  Instead, Plaintiff's claim of negligent interference is a

18  virtual carbon copy of his intentional interference claim, without any mention of any

19  special relationship or other facts supporting the existence of a duty of care.[29]

20  Accordingly, Plaintiff's negligent interference claim fails on this ground as well.

21  **C.   Plaintiff's Claim for Unjust Enrichment Should Be Dismissed.**

22         There is no common law cause of action under California law for unjust

23  enrichment.  Rather, unjust enrichment is merely a basis for obtaining restitution

24  based on a quasi-contract theory.  McKell v. Washington Mutual, Inc., 142 Cal. App.

25  4th 1457, 1490 (2006); see also, Lauriedale Assoc. v. Wilson, 7 Cal. App. 4th 1439,

---

26  [29]   The only difference between the two claims is Plaintiff's replacement of the
27  "intent" language from paragraph 30 of his intentional interference claim with "knew
    or should have known" in paragraph 37 of his negligent interference claim.  (Compare
28  FAC ¶¶ 28-33 to FAC ¶¶ 35-40.)

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1448 (1992) (unjust enrichment "does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so").  Thus, not only is Plaintiff's unjust enrichment claim preempted by the Copyright Act, it is not a viable cause of action in California.

## VI.    CONCLUSION

For the reasons stated above, Plaintiff's FAC fails to state any claim upon which relief may be granted.  Plaintiff's *Carnival of Souls* and Season 4 of *Heroes* share no common elements other than the generic, commonplace and unprotectable idea of a carnival.  Because of the lack of any protectable similarity between the works, Plaintiff's copyright infringement claim fails as a matter of law.  Moreover, Plaintiff's state law claims are preempted because they are based upon underlying rights equivalent to those set forth in the Copyright Act, and are substantively deficient as well. Accordingly, the Court should grant Plaintiff's Motion to Dismiss in its entirety and dismiss Plaintiff's FAC without leave to amend.

Dated: August 10, 2010

KATTEN MUCHIN ROSENMAN LLP
Gail Migdal Title
Joel R. Weiner
Cory Baskin

By: /s/Gail Migdal Title
       Gail Migdal Title
Attorneys for Defendants NBC UNIVERSAL, INC., NBC STUDIOS, INC. and TAILWIND PRODUCTIONS, INC.

**Katten**
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

31527988_206172_00354