1   MICHAEL M. BARANOV – SBN 145137
    BARANOV & WITTENBERG, LLP
2   1901 Avenue of the Stars, Suite 1750
    Los Angeles, California 90067
3   Tel: (310) 229-3500 Fax: (310) 229-3501
    e-mail: mbaranov@mbgwlaw.com

4
    Attorneys for Plaintiff, JAZAN WILD dba CARNIVAL COMICS
5

6

7                     UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9

10  JAZAN WILD, an individual, dba        Case No. CV10 3615 DMG(AJWx)
    CARNIVAL COMICS,
11
                    Plaintiff,            **OPPOSITION TO MOTION TO**
12                                        **DISMISS PLAINTIFF'S FIRST**
                                          **AMENDED COMPLAINT;**
         -vs-                             **MEMORANDUM OF POINTS AND**
13                                        **AUTHORITIES AND DECLARATION**
    NBC UNIVERSAL, INC., a Delaware       **OF MICHAEL M. BARANOV IN**
14  corporation, NBC STUDIOS, INC., a New **SUPPORT THEREOF**
    York corporation, TAILWIND
15  PRODUCTIONS, INC., a California       DATE:  September 13, 2010
    corporation,                         TIME:   9:30 a.m.
16                                        PLACE: Courtroom 7
                    Defendants.
17                                        Complaint Filed:  May 13, 2010
                                          FAC Filed: May 19, 2010
18

19

20

21

22          Plaintiff, JAZAN WILD aka JASON BARNES, hereby submits the following

23  Memorandum of Points and Authorities and Declaration of Michael M. Baranov in opposition to

24  defendants' Motion to Dismiss Plaintiff's First Amended Complaint:

25

26

27

28

                                         1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.      INTRODUCTION**

The main premise of defendants' motion is that the two works in question, plaintiff's comic book series "Carnival of Souls" and defendants' television series "Heroes" do not contain substantially similar creative elements, other than an idea of a supernatural carnival, which is an uprotectable *scene a faire*. Defendants assert that the storylines and characters of the two works are not similar. Defendants are mistaken. The allegations of plaintiff's first amended complaint[1] set forth a number of specific elements that defendants have illicitly copied from plaintiff's copyrighted work. These include the basic premise of the carnival arch and identically looking scenes and characters. Equally misplaced is defendants' argument that all of plaintiff's state claims are preempted by federal law.

**2.      DEFENDANTS MOTION FAILS TO OVERCOME THE ALLEGATIONS OF
        PLAINTIFF'S FIRST AMENDED COMPLAINT**

A motion for failure to state a claim is not a procedure for resolving a contest about the facts or merits of the case. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1151 (CD Cal. 2003). Dismissal for failure to state a claim is appropriate only when the plaintiff can prove no set of facts supporting relief. *Guerrero v. Gates* (9th Cir. 2004) 357 F. 3d 911, 916. Accordingly, the motion is viewed with disfavor and is rarely granted. *Gilligan v. Jamco Dev. Corp.* (9th Cir. 1997) 108 F. 3d 246, 249; *Gallardo v. DiCarlo* (CD Cal. 2002) 203 F. Supp. 2d 1160, 1164-1165.

A defendant may object to the plaintiff's complaint for failing to state a claim on which relief can be granted by filing a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is to test the formal sufficiency of the plaintiff's statement of the claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed 2d 80 (1957); *Navarro v. Block*, 250 F. 3d 729, 732 (9th Cir. 2001).

---

[1] Plaintiff's initial complaint was filed on May 13, 2010. Six days later, on May 19, 2010, before service on the defendants was completed, plaintiff filed the first amended complaint to correctly name the defendants and their states of incorporation. None of the factual allegations or causes of action were affected by the amendment.

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Essentially, a motion to dismiss for failure to state a claim tests the plaintiff's compliance with the liberal pleading requirements of Fed. R. Civ. P. 8(a)(2). *Gallardo v. DiCarloi,* 203 F. Supp. 2d 1160, 1165 (CD Cal. 2002); *see* Fed. R. Civ. P. 8(a)(2)]. Thus, a motion to dismiss for failure to state a claim is appropriate when: (1) The complaint lacks a cognizable legal theory (*Navarro v. Block* (9th Cir. 2001) 250 F. 3d 729, 732 ; *Balistreri v. Pacifica Police Dep't* (9th Cir. 1988) 901 F. 2d 696, 699; (2) The complaint lacks sufficient facts to allege a cognizable legal theory (*Id*); or (3) An affirmative defense or other bar to relief is apparent from the face of the complaint. S*ee* *Groten v. California*, 251 F. 3d 844, 851 (9th Cir. 2001).

Unlike other motions to dismiss under Fed. R. Civ. P. 12(b), a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles* (9th Cir. 2001) 250 F. 3d 668, 688-689.

Plaintiff's first amended complaint sufficiently alleges copyright infringement by defendants. Paragraphs 14 through 20 outline the long list of similarities between the two works. Both are a story of a magical carnival that seeks carneys with special abilities in order to prepare for a final showdown. The protagonist in both stories discovers the carnival waiting for him in the wood, while being chased by an angry mob that believes he has committed a murder. Both protagonists were at the carnival 14 or 15 years later, as young boys. The similarities are illustrated by twelve pages of exhibits, which show that some of the scenes, settings and characters are identical in both works.

Instead of focusing on the allegations of plaintiff's pleading, defendants disregard them as "random, cherry-picked incidents." Even a cursory review of the first amended complaint proves defendants' self-serving conclusion wrong. First, these are not generic *scenes a faire.* These are specific, discernible similarities. The layout of the carnivals in Exhibit 1B is similar. The ringmasters in Exhibit 1C look and act alike. The opening sequence of both is the same, with the protagonists, falsely accused of murder, fleeing an angry mob, hearing the call of a female character and then discovering a magical carnival, that they both visited 14 or 15 years earlier, appear in a remote wooded area. (FAC, paragraph 16.) Both protagonists are greeted by an ethereal figure with outstretched hands. *See* Exhibit 2A-2D. There are further similarities. There is an identical-looking circular house of mirror where the protagonist sees an image of his deceased mother. (FAC, Paragraph 17.) *See* Exhibits 3A-3C. In defendants'

3

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

storyboards for this scene, the house of mirrors is a rectangular room, with mirrors hanging on the walls. *See* Exhibit "A" to the Baranov Declaration and Exhibits 3A-3C to the first amended complaint.  How did the appearance of the scene change, unless defendants actually used plaintiff's work as a storyboard?

There is a kinetic energy sequence in the house of mirrors.  *See* Exhibits 4A-4B.  Then, there is the appearance of a Jamaican Witchdoctor.  (FAC, paragraph 18.)  *See* Exhibits 5A-5B.  Defendants claim that he is also a generic figure.  Interestingly, defendants' original storyboards for this scene portrayed this character as Caucasian.  *See* Exhibit "B" to the Baranov Declaration and Exhibits 5A-5B to the first amended complaint.  Again, the difference between defendants' original appearance of this character and the actual character, that is identical to that in plaintiff's work, leads to an inescapable conclusion that defendants actually copied plaintiff's copyrighted work.

Equally damning to defendants' motion is the subplot of a hunter who is determined to destroy the carnival.  This storyline exists in both works.  The culmination of this storyline is illustrated in Exhibits 8 and 9 to the first amended complaint, where both hunters observe the carnival through the scope of their rifle and see their daughter.

The first amended complaint further alleges that both carnivals are destroyed, with defendants' graphic novel having a similar ending to that of plaintiff's work, with the broadcast ending having a different ending, in an attempt to minimize the similarity.  (FAC, paragraph 20.)

The above allegations of similarities are more than sufficient to state a cause of action for copyright infringement.  Therefore, defendants' motion to dismiss this claim must be denied.

## 3.   **PLAINTIFF'S COPYRIGHT CLAIM IS PROPER**

The purpose of copyright laws is to protect an author of a copyrighted work from unauthorized copying.  The scope of copyright is broad.  Thus, copyright of a song protects its theme, story, and unique arrangement of words and phrases.  *Gingg v. Twentieth Century Fox Film Corp.*, 56 F. Supp. 701 (DC Cal. 1944).  In *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991 (ED Cal. 2007), defense motion to dismiss a copyright claim was denied because given low threshold of creativity required to create "original work" and accepting allegations in complaint as true, publishing company had adequately pled

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

that defendants' conduct of sharing password to subscription based publication infringed company's

"original work."

Defendants assert that their TV series, "Heroes", is different from plaintiff's "Carnival of Souls". They assert that the alleged similarities are merely random.  Defendants are mistaken.  In *Nutt v. National Institute Incorporated for the Improvement of Memory*, 31 F. 2d 236, 238 (2 Cir. 1929), the court said, "Copying is not confined to a literal representation but includes various models in which the matter of any publication may be adopted, imitated, or transferred with more or less colorable alteration."       In *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F. 2d 354 (9th Cir. 2000), defendants contended that the alleged infringement did not constitute an appropriation of a material and substantial portion of the copyrighted picture.  The trial court disagreed.  It stated:  "[a]n infringement is not confined to literal and exact repetition or reproduction; it included also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy.  … Copying and infringement may exist, although the work of the pirate is so cleverly done that no identity of language can be found in the two works."  *Id.*, at 360.  It elaborated:  "To constitute an invasion of copyright it is not necessary that the whole of a work should be copied, or even a large portion of it in form or substance, but that, if so much is taken that the value of the original is sensibly diminished, or the labors of the original author are substantially, to an injurious extent, appropriated by another, that is sufficient to constitute an infringement.  (citation.)  [T]he unauthorized use, copy or appropriation is not to be neutralized on the plea that 'it is such a little one.'"  Id. at 361.

"Many literary characters may embody little more than an unprotected idea [while] a comic book character, which has physical as well as conceptual qualities, is more likely to contain some unique elements of expression."  *Walt Disney Prods. vs. Air Pirates*, 581 F. 2d 751, 755 (9th Cir. 1978).

Defendants' argument that the scenes, settings, storylines and characters contained in plaintiff's comic book are somehow outside of protection of copyright laws flies in the face of the above authorities.  True, defendants did not copy plaintiff's work lock stock and barrel.  But they did copy its main plotline, that of a boy who is summoned to a magical carnival because of his special abilities, when his life is in peril.  They also copied various settings and characters, contained in plaintiff's work.  These similarities include, but are not limited to:

5

(a) **The Magical Carnival**   In episode 402 of "Heroes", titled "Orientation", and in the Online Graphic Novel 145, "Stolen Fate", a magical carnival is introduced.  It is described in "Stolen Fate":  "A mysterious and powerful Carnival has been intersecting with the lives of our Heroes. 14 years ago, Hiro Nakamura visited this very Carnival as a boy when it was in Tokyo. There, he was given a fortune prophesying his heroic destiny."

In "Heroes", the carnival is led by a dark character, much like "Carnival Of Souls'" Jexter "The Clown." Both leaders of the carnivals have one purpose: to collect people with super abilities and make their respective carnivals more powerful. Both carnivals can magically appear and disappear in order to collect the carnies.  Both carnivals have traveled throughout the world looking for their potential carnies, intersecting with the lives of their heroes.

(b) **The Carnival Seeks Out Boy, 14 / 15 Yrs Later**   "Heroes" has a young boy, Hiro Nakamura, who enters the magical carnival.  Fourteen years later, the very same carnival seeks him out, because he is a potential carney with super human abilities.  "Carnival Of Souls" has a young boy, Jazan Wild, enter the magical carnival.  Fifteen years later, the very same carnival seeks him out, because he is a potential carney with super human abilities.

(c) **The Magical Carnival Appears In The Woods**   In episode 405 of "Heroes", "Hysterical Blindness", the magical carnival appears in the middle of a remote wooded area, to take in Sylar (a potential carney with super human abilities), who is on the run.  Sylar has been accused of murder.  He is with a love interest when the chase begins. He leaves his love interest behind and begins running through the woods.  As he enters a clearing, the magical carnival appears from out of nowhere. It is deserted and empty.  Sylar enters the carnival and it disappears before the pursuers can reach him.

In "Carnival Of Souls", Issue One ,the magical carnival appears in the middle of a remote wooded area, to take in Jazan (a potential carney with super human abilities) on the run.  Jazan has been accused of murder; he is with a love interest when the chase begins. He leaves his love interest behind and begins running through the woods.  As he enters a clearing, the magical carnival appears from out of nowhere.  It is deserted and empty.  Jazan enters the carnival and it disappears before the pursuers can reach him.

(d) **Taken In Carney Struggles To Fit In**   In episode 406 of "Heroes", "Tabula Rasa", once rescued in the woods by the magical carnival, Sylar struggles to fit in among the carnival clan.  In

6

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

"Carnival Of Souls", Issue Two, once rescued in the woods by the magical carnival, Jazan struggles to fit in among the carnival clan.

(e) **The House Of Mirrors And The Mother**  In episode 406 of "Heroes", "Tabula Rasa", Sylar enters a House Of Mirrors that has the mirrors encircle him. Suddenly, his mother, who has passed away, calls out his name and Sylar replies, "Mom?" His mother appears in every mirror. She reveals dark secrets and he cries out in pain.

In "Carnival Of Souls", Issue Two, Jazan enters a House Of Mirrors that has the mirrors encircle him.  Suddenly his mother, who has passed away, calls out his name and Jazan replies, "Mother?" His mother appears in every mirror. She reveals dark secrets and he cries out in pain.

(f) **The House Of Mirrors And Kinetic Energy**  In episode 406 of "Heroes", "Tabula Rasa", Sylar (Evil side of Sylar, there is a Jekyll & Hyde element being used here), the evil side enters the House Of Mirrors and blasts Kinetic Energy out of his hands.

In "Carnival Of Souls", Issue Three, The Hunter, the evil character in Carnival Of Souls, enters the House Of Mirrors and blasts Kinetic Energy out of his hands.

(g) **The Fortune Teller Is Warned**  In episode 417 of "Heroes", "The Art of Deception", the fortune teller is warned that a hunter is coming to attack the carnival. Claire comes running to the carnival. Lydia grabs her hands and sees that the hunter is coming to attack the carnival.

In "Carnival Of Souls", Issue Three, the fortune teller is warned that a hunter is coming to attack the carnival.  Esmeralda is reading a carnival attendee's fortune, when she sees that the hunter is coming to attack the carnival.

(h) **The Hunter Attacks The Magical Carnival**  In episode 417, "The Art of Deception", of Heroes, HRG, who is known as the hunter of heroes, attacks the carnival and tries to stop it from becoming more powerful. His daughter is at the carnival when it is attacked.

In "Carnival Of Souls", Issue Three, Victor, the evil hunter in Carnival Of Souls, attacks the carnival and tries to stop it from becoming more powerful.  His daughter is at the carnival when it is attacked.

(i) **The Magical Carnival Is Destroyed**  In episode 406 of "Heroes", "Brave New World", the carnival heads to New York City where it is almost destroyed. The Online Graphic Novel 165, "Consequences", has the magical carnival being completely brought to the ground and destroyed.

7

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1    In "Carnival Of Souls", Issue Three, the magical carnival is completely brought to the ground and

2    destroyed. It is a Carnival Of Souls, and so it lives on. The Carnival Of Souls story ends with the carnival

3    heading to New York City.

4    (j)  **The Concept Of A Magical Carnival Searching For Super Humans To Prepare For An**

5    **Impending Fight**  The entire fourth season of "Heroes" was based on the very concept of a dark carnival

6    leader needing to recruit super human carnies to make his carnival powerful, to prepare for an impending

7    showdown.   This storyline was the main focus for the entire season.

8    The entire story line for "Carnival Of Souls" is based on the same concept, that of a dark carnival

9    leader needing to recruit super human carnies to make his carnival powerful, for an impending showdown.

10    Even though "Carnival Of Souls" has sub-stories, much like "Heroes" has sub-stories, the main story has

11    always been a dark figure that led a carnival and collected super human carnies.

12    All of these similarities constitute copyright infringement under the law.  This is yet another reason

13    why defendants' motion should be denied.

14

15    **4.    THE COURT SHOULD NOT CONSIDER EXTRINSIC MATERIALS SUBMITTED BY**

16    **DEFENDANTS**

17    As a general rule, a district court may not consider any material beyond the pleadings in ruling on a

18    motion to dismiss under Fed R Civ P 12(b)(6)  *Lee v. City of Los Angeles*, 250 F3d 668, 688 (9th Cir

19    2001). Thus, if the court considers matters outside the pleadings, it must treat the motion as one for

20    summary judgment.  *See* Fed R Civ P 12(b), 56.  On conversion of a motion to dismiss under Rule 12(b)(6)

21    to a Rule 56 motion, the court must give all parties a reasonable opportunity to present material pertinent to

22    a motion for summary judgment.  *See* Fed R Civ P 12(b), 56.

23    Defendants have submitted to the court a plethora of intrinsic materials.  They want the court to

24    consider the DVDs of the entire season of their show.  They want the court to read a novel by Ray

25    Bradbury and watch an HBO series.  They try to use these materials to illustrate their points that carnivals

26    are "common and prevalent."  This argument is grotesquely misleading.  Plaintiff is not staking a claim to a

27    supernatural carnival.  Rather, he is trying to protect his specific portrayal of one such carnival which was

28    unceremoniously copied by defendants.  Therefore, the materials presented by defendants are irrelevant to

plaintiff's claim and to a showing of a Rule 12b(6) motion.  Nor is plaintiff able to competently respond to these purported exhibits without the benefit of discovery and expert testimony.  If defendants' exhibits are considered and, if effect, their motion is converted to one for summary judgment, plaintiff will be greatly prejudiced by not having any notice and opportunity to respond.

Discovery is yet to commence.  However, plaintiff's investigation has revealed that defendants have engaged in actual copying of his copyrighted works when they created "Heroes".   The storyboards attached hereto as Exhibits "A" and "B" demonstrate that defendants' art department envisioned the scenes in defendants' screenplays totally differently from the vision of either the writer or the producers. Somehow, when the show was produced, the house of mirrors looked like that in "Carnival Of Souls".  The Damian character has also morphed into a Jamaican witchdoctor.  Discovery will reveal how, and at whose direction, this transformation occurred.  The only reasonable inference that can be made is that "Carnival Of Souls" was used as the storyboard.  This is yet another reason why defendants' motion must be denied and plaintiff's meritorious copyright claim should be presented to the trier of fact after proper discovery has taken place.


5.     **PLAINTIFF'S STATE LAW CLAIMS ARE PROPER**

The allegation of a copyright application was necessary for the court to acquire jurisdiction over this suit and to exercise pendent jurisdiction over the complaint's state law causes of action.  _Kodadek v. MTV Networks, Inc._, 152 F. 3d 1209, 1211 (9th Cir. 1998).  Defendants contend that plaintiff's four state law claims are preempted because they arise from the copyright claim.  However, the law permits such claims when they are not derived from the exclusive rights under the Copyright Act but, instead, have a separate origin.

For instance, in _Shuprine v. McDougal Littell_, 535 F. Supp. 2d 892 (ED Tenn. 2008),   state fraud claim was not preempted by the Copyright Act, 17 USCS § 301, because it was not equivalent to any of exclusive rights under 17 USCS § 106 as it required misrepresentation of material fact, knowledge of falsity, fraudulent intent, and reliance on misrepresentation; further, the claim was qualitatively different from copyright infringement claim.

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Similarly, in _Utopia Provider Sys. v Pro-Med Clinical Sys., L.L.C._, 596 F. 3d 1313 (CA11 Fla. 2010), plaintiff copyright holder's breach of contract claims against defendant marketing agent were not preempted, since holder would have to prove valid license agreement, which was an "extra element," and thus, asserted contract rights were not equivalent to 17 USCS § 106's exclusive rights as required for preemption under 17 USCS § 301.

None of state law claims brought by plaintiff music publisher against defendant record company in _Hustlers, Inc. v. Thomasson_, 253 F. Supp. 2d 1285 (ND Ga. 2002),were preempted because although rights at issue in litigated compositions fell within subject matter of copyright, violation of exclusive rights of 17 USCS § 106 did not give rise to claims for breach of contract, unjust enrichment, breach of fiduciary duty, promissory estoppel, or fraud.

The same holds true with respect to plaintiff's four state claims.  The second and third causes of action are, respectively, for intentional and negligent interference with prospective economic advantage. These claims are based on the allegations that defendants interfered with plaintiff's economic relationship with current and prospective purchasers and licensees of "Carnival of Souls" in order to prevent him from developing his works into various other multimedia properties.  Defendants' violation of plaintiff's copyrights does not give rise to these claims for wrongful commercial conduct.

Likewise, the fourth claim for unfair competition, which, in addition to copyright infringement, alleges interference with business relationships and other unlawful practices, designed to take commercial advantage of plaintiff's investment in order to minimize his competitive advantage over defendants.  Thus, this cause of action contains elements of wrongful conduct, with separate burdens of proof, other than copyright infringement.

Finally, the fifth cause of action for unjust enrichment and restitution calls for restitution of all benefits defendants have derived as a result of their wrongful commercial conduct and their interference in plaintiff's economic relationship.

Therefore, these causes of action contain allegations outside the scope of the Copyright Act and, as such, are not subject to preemption.  Defendants' motion to dismiss should be denied.

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**6.** **CONCLUSION**

Defendants' motion seeks to overwhelm and confuse.  Instead of focusing on its real issue, whether federal copyright law preempts plaintiff's four state causes of action, defendants try to attack the entire complaint.  They do so despite the inescapable fact that on its face, the complaint contains ample allegations of copyright infringement.  They do so despite the fact that defendants' television series contains a plethora of specific similarities to plaintiff's comic books, such as themes, settings, storylines and characters.  They do so even though defendants' own storyboards tend to incriminate them in illicit copying.  Some of the scenes, settings and characters in defendants' television program look nothing like the storyboards.  Instead, they are virtually identical to those in plaintiff's comic books.  It is inconceivable that defendants have created the fourth season of "Heroes" without copying plaintiff's work.  Equally misplaced are defendants' assertions of federal preemption.

It is respectfully requested that defendants' motion be denied in its entirety.  In the event, however, the court is inclined to grant portions of the motion, plaintiff requests leave to amend his complaint.


DATE:  August 23, 2010                          BARANOV & WITTENBERG, LLP


                                                By:   /S/ MICHAEL M. BARANOV
                                                      Michael M. Baranov, Esq.
                                                      Attorneys for Plaintiff

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1

## **DECLARATION OF MICHAEL M. BARANOV**

2

3          I, MICHAEL M. BARANOV, declare:

4          1.        I am an attorney at law, duly licensed to practice before all the courts of the State of

5   California.  I am a principal of the firm of Baranov & Wittenberg, LLP, attorneys of record for the plaintiff

6   herein.  I have personal knowledge of all the facts set forth herein, other than those which I state on

7   information and belief and which I believe to be true, and, if called upon, could and would testify

8   competently thereto.

9          2.        I am informed and believe that attached hereto as Exhibit "A" is a true and correct copy of

10   a portion of a script and storyboard of Episode 406 of defendants' television series Heroes, "Tabula Rasa,

11   portraying the house of mirrors, which is rectangular, with mirrors hanging on the walls.

12          3.        I am informed and believe that attached hereto as Exhibit "B" is a true and correct copy of

13   a portion of a script and storyboard of Episode 406 of Heroes, "Tabula Rasa, portraying the character of

14   Damian, who in this storyboard appears to be Caucasian.

15          I declare under penalty of perjury under the laws of the State of California that the foregoing is

16   true and correct.

17          Executed this 23rd day of August, 2010, at Los Angeles, California.

18

19                                              /S/ MICHAEL M. BARANOV
                                              Michael M. Baranov
20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Executive Producer:        Tim Kring            Episode #406
Executive Producer:        Dennis Hammer        Script #406
Executive Producer:        Adam Armus           Production #04006
Executive Producer:        Kay Foster
Executive Producer:        Jim Chory
Director:                  Jim Chory

# H E R O E S

**VOLUME FIVE**
**"REDEMPTION"**

**CHAPTER SIX**
**"Tabula Rasa"**

Written by

Rob Fresco

Production Draft          07/30/09
Full Blue Draft           08/03/09
Pink Revision Pages        08/10/09
Yellow Revision Pages      09/02/09
Green Revision Pages       09/24/09
*Computer Page Count:  43 5/8*    2nd White Revision Pgs   09/25/09

© 2009 BY NBC STUDIOS, INC.
ALL RIGHTS RESERVED.   NOT TO BE DUPLICATED WITHOUT PERMISSION.
This material is property of NBC Studios, Inc. and is intended solely for use by its personnel.  The
sale, copying, reproduction or exploitation of this material in any form is prohibited.  Distribution
or disclosure of this material to unauthorized persons is prohibited.

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

HER○ES

Episode: _____
Director: _____

scene: **19**
shot: **5**

Damien
Lays hands
on sylar

VFX:

scene: **19**
shot: **6**

VFX: Reflection
mirrors.

scene: **19**
shot: **7 A**
Cam Dollies 360°

CAM

VFX:

CAM
Dolly 360°

20

**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**



**OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**